## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMMANUEL ROBINSON,      )
                  )
      Plaintiff,     )
                  )
      v.            )     Civil Action No.  03-1455 (RCL)
                  )
DISTRICT OF COLUMBIA, *et al.*,  )
                  )
      Defendants.   )


EMMANUEL ROBINSON,      )
                  )
      Plaintiff,     )
                  )
      v.            )     Civil Action No.  03-1456 (RCL)
                  )
DISTRICT OF COLUMBIA, *et al.*,  )
                  )
      Defendants.   )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on defendants' motion for summary judgment.  Having considered the motion, plaintiff's opposition, and the record of this case, the Court will grant summary judgment for defendants.

## I.  BACKGROUND

On or about May 11, 2003 at 2:00 a.m., Metropolitan Police Department ("MPD") Officers Smith and Grajales encountered plaintiff sitting in a parked car near the intersection of 17th and M Streets, N.W. in Washington, D.C.[1]  *See* Amd. Compl. ¶ 10; Memorandum of Points

---

[1]     It does not appear that Officer Smith was served with process.  Review of the docket indicates that service by mail was attempted by sending a summons and complaint,

(continued...)

and Authorities in Support of Defendants District of Columbia, Anthony Williams, and Oscar

Grajales' Motion for Summary Judgment ("Defs.' Mot."), Ex. 3 (May 12, 2003 statement).  The

officers were responding to a report of "an individual tampering with an auto outside of 1615 M

Street NW described as a black man with a crow bar."  *Id.*  Officer Grajales approached plaintiff,

the "man in a brugandy [sic] 4-door car backing out of a parkingspot," and asked for his driver's

license.  *Id.*  Plaintiff identified himself as "Manuel Robinson."  *Id.*  A "wales check" found that

plaintiff had no driver's license.  *Id.*  Officer Smith saw "pocketbooks on the floor and passenger

seat of the vehicle."  *Id.*  "A security officer at 1615 M Street NW came to the scene and

identified [plaintiff] as the man she had observed carrying what appeared to be a crowbar

walking up and down the sidewalk, looking into ca[r]s, and touching door handles."  *Id.*

Officer Smith searched the car and "discovered several purses, an approximately 24-inch

screwdriver, black gloves, and additional items."  Defs.' Mot., Ex. 3.  The officers "located the

owners of two of the purses who indicated that their property had been taken from a third

individual's car while that vehicle was parked on the 1200 block of 17th Street NW.  The owner

of the car indicated that his right rear window was broken.  A victim's social security card . . .

[was] recovered from [plaintiff's] coat pocket[]."  *Id.*

Officer Grajales arrested plaintiff.  Defs.' Mot., Ex. 3.  In the course of the arrest,

---

[1](...continued)
addressed to "Police Smith," to MPD's Third District headquarters, and that "Isaiah L.
Cunningham" signed the return receipt.  *See* Dkt. #3 (Notice and Acknowledgment of Receipt of
Summons and Complaint by Mail).  No pleading or motion is filed on Officer Smith's behalf.
He will be dismissed without prejudice as a party to this action.

"plaintiff was pushed onto the hood of his automobile."[2]  Amd. Compl. ¶ 10.  Handcuffs were

placed tightly around plaintiff's wrists, leaving abrasions and causing plaintiff's wrists to swell.

*Id.*; Defs.' Mot., Ex. 2 (excerpt from plaintiff's deposition transcript).  According to the criminal

information, plaintiff was charged with second degree theft and destroying property, in violation

of D.C. Code §§ 22-303, -3211, -3212(b).  *Id.*, Ex. 2 (Information, No. M0375103).  Counsel for

plaintiff represents that the criminal charges were dismissed.  Plaintiff's Opposition to

Defendants' Motion for Summary Judgment ("Pl.'s Opp'n") at 5 (page numbers designated by

Court).

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is granted to the movant "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of

the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

---

[2]        Plaintiff did not specify which officer pushed him onto the hood of his
automobile, arrested him, or placed handcuffs on him.  *See* Amd. Compl. ¶ 10.  In his deposition,
plaintiff initially stated that Officer Smith "pushed" and "shoved" him, "held [him] down," and
handcuffed him.  Defs.' Mot., Ex. 2 (excerpt from plaintiff's deposition transcript)).  Later,
however, plaintiff could not "recall precisely" whether Officer Smith committed these acts
because plaintiff didn't "know who was who."  *Id.*

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "By pointing to the absence of

evidence proffered by the non-moving party, a moving party may succeed on summary

judgment." *Fernandors v. District of Columbia*, 382 F.Supp.2d 63, 68 (D.D.C. 2005) (citing

*Celotex Corp. v. Catrett*, 477 U.S. at 322).  When evaluating a summary judgment motion,

"[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby,

Inc.,* 477 U.S. at 255; *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

The party opposing a motion for summary judgment "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v.

Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).  If

evidence in the non-moving party's favor is "merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50

(internal citations omitted).

*B.   Constitutional Claims*

1. <u>Conspiracy to Violate Plaintiff's Civil Rights</u>

Plaintiff alleges that "defendants," who are not specified in the Amended Complaint,

"agreed and conspired with one another to violate the Plaintiff's rights as guaranteed by the

Fourth and Fourteenth Amendments to the United States Constitution."  Amd. Compl. ¶ 51

(Count Four).  In his opposition to defendants' motion, he asserts that Officers Smith and

Grajales "conspired with each other to violate the plaintiff's rights" and furthered the conspiracy

with the "trumped up charges and the affidavit sworn without truth to cover that up."  Pl.'s

4

Opp'n at 9 (page number designated by Court).

The elements of a civil conspiracy are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C. Cir. 1983).  Insofar as plaintiff alleges that a municipal corporation conspired with its employees, his claim must fail.  The District of Columbia and the MPD officers are, in essence, one entity.  *See Michelin v. Jenkins*, 704 F.Supp. 1, 4 (D.D.C. 1989) (finding that Board of Elections and Ethics and its officials are single entity incapable of entering into conspiracy); *Gladden v. Barry*, 558 F.Supp. 676, 679 (D.D.C. 1983) (concluding that plaintiff cannot show conspiracy between District of Columbia and its employee because the conduct complained of was a single act by a single entity).

Insofar as plaintiff alleges a conspiracy to violate his civil rights, the Court presumes that plaintiff brings his conspiracy claim pursuant to 42 U.S.C. § 1985(3).[3]  In order to prevail in a cause of action under 42 U.S.C. § 1985(3), plaintiff must demonstrate "a conspiracy motivated

---

[3]     In relevant part, 42 U.S.C. § 1985(3) provides:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*Id*.

by some racial, or perhaps class based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Nothing in his Amended Complaint alleges or suggests a discriminatory motive behind defendants' actions, and his opposition to defendants' motion offers no evidentiary support.  The Court will grant summary judgment for defendants on the constitutional conspiracy claim (Count Four).

### 2.  Fourth Amendment Claims

#### a.  Qualified Immunity Protects Officer Grajales

Plaintiff alleges that he was "arrested without reason" and that "handcuffs were placed on him too tightly."  Amd. Compl. ¶ 10.  He asserts, presumably, that defendants not only lacked probable cause for his arrest but also used excessive force in effecting his arrest, in violation of the Fourth Amendment to the United States Constitution.[4]  Defendant Grajales argues that he is entitled to qualified immunity and thus cannot be held personally liable for damages.  *See* Defs.' Mot. at 7-13.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (noting that qualified immunity shields government officials from liability for civil damages "as long as their actions could reasonably have been consistent with the rights they are alleged to have violated"); *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006).  "[W]hether an official protected by

---

[4]      In relevant part, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. at 639 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 819). The official's subjective good faith is not relevant in a qualified immunity analysis. *See Harlow v. Fitzgerald*, 457 U.S. at 818. An official protected by qualified immunity enjoys "*immunity from suit* rather than a mere defense to liability," which is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, questions of immunity are matters of law for the Court to decide as early in the proceedings as possible. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) ; *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); *see also District of Columbia v. Jackson*, 810 A.2d 388, 393-94 (D.C. 2002) (noting that qualified immunity in excessive force case is issue of law for court to decide).

To determine whether a party is entitled to qualified immunity, the Court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. at 201. Next, the Court must determine "whether the right was clearly established." *Id.* The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640.

*i.* Probable Cause

"It is well settled that an arrest without probable cause violates the [F]ourth [A]mendment." *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). A Fourth Amendment claim for unlawful arrest "may be established upon a showing that there was no probable cause to support a plaintiff's warrantless arrest and

detention." *Fernandors v. District of Columbia*, 382 F.Supp.2d at 71.  Probable cause for

plaintiff's arrest exists if, at the time of the arrest, the facts and circumstances known to the

arresting officer based on trustworthy information were sufficient to warrant a prudent man in

believing that plaintiff violated District of Columbia law.  *See Hunter v. Bryant*, 502 U.S. at 228

(citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  "The relevant question . . . is . . . whether a

reasonable officer could have believed [plaintiff's arrest] to be lawful, in light of clearly

established law and the information the [] officers possessed."  *Anderson v. Creighton*, 483 U.S.

at 641.

On this record, the Court concludes that Officer Grajales had probable cause to arrest

plaintiff.  Defendants establish that Officers Grajales and Smith responded to a radio run

regarding a black man with a crow bar who was seen tampering with a vehicle near 1615 M

Street, N.W, and that a witness identified plaintiff as the man she had seen with a crowbar

looking into cars and touching door handles.  Further, defendants establish that several purses

were found in the vehicle plaintiff was driving, that at least one of the purses had been stolen

from another vehicle, and that the victim's property was found in plaintiff's pocket.

Based on the information available to Officer Grajales at the time of plaintiff's arrest, it

was reasonable for the officer to believe that plaintiff committed theft and destroyed property, in

violation of certain provisions of the District of Columbia Code.[5]  Plaintiff's arrest was lawful,

---

[5]     Defendants also assert that plaintiff's failure to produce a valid motor vehicle
operator's permit justified his arrest under D.C. Code § 50-1401.01(c).  *See* Defs.' Mot. at 11.
D.C. Code § 50-1401.01(c) provides:

> Any individual to whom a license or permit to operate a motor
> vehicle has been issued shall have the license or permit in his or her

(continued...)

and therefore did not violate his Fourth Amendment rights.

Police officers "should not be hindered by the threat of civil liability from attempting to perform their duties to the best of their abilities," as long as they are not violating clearly established constitutional or statutory rights. *District of Columbia v. Evans*, 644 A.2d 1008, 1016 (D.C. 1994). The Court concludes that Officer Grajales is entitled to qualified immunity with respect to plaintiff's arrest.

## *ii*. Excessive Force

Making an arrest "carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Generally, the "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. at 202 (citing *Graham v. Connor*, 490 U.S. at 394). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. at 396. A claim of excessive use of force turns on whether the officers' conduct was reasonable under the circumstances confronting the officer at the time. *See Tennessee v. Garner*, 471 U.S. 1, 8-12 (1985). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham*

---

[5](...continued)
> immediate possession at all times while operating a motor vehicle in the District of Columbia and shall exhibit the license or permit to any police officer upon demand. Any person who fails to comply with the requirements of this subsection shall, upon conviction, be fined not less than $10 nor more than $50.

*Id.* It does not appear that plaintiff was charged with a violation of this D.C. Code provision, however.

*v. Connor*, 490 U.S. at 395-97.

In this case, the arresting officer pushed plaintiff and shoved him onto the hood of his car, and held plaintiff down while putting the handcuffs on plaintiff's wrists. The handcuffs were put on tightly enough to cause swelling and abrasions, but plaintiff suffers no ongoing or permanent injury.

Based on these facts, the Court concludes that the level of force used to effect plaintiff's arrest objectively was reasonable under the circumstances, and that plaintiff's Fourth Amendment rights were not violated. The crimes plaintiff was suspected of having committed were not violent crimes. Nothing in the record suggests that plaintiff resisted arrest, posed a threat to the officers' safety or to the safety of any bystanders, or attempted to flee the scene. This is not a situation where an arrestee was beaten, shot, or permanently injured as a result of the arresting officers' use of force. *See, e.g., District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003) (MPD officers allegedly pulled plaintiff from his car and "repeatedly beat him with a blunt object about the back, head, and face for half an hour"); *Etheredge v. District of Columbia*, 635 A.2d 908, 911 (D.C. 1993) (MPD officers responding to domestic dispute call shot plaintiff in the back, causing serious injuries including partial paralysis). Rather, the record shows that the amount of force used s enough to effect the arrest without causing plaintiff undue physical harm or lasting injury. *See, e.g., Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1999) (grabbing arrestee by the arm and pulling her out of vehicle's passenger seat was reasonable level of force); *Magwood v. Giddings*, 672 A.2d 1083, 1088 (D.C. 1996) (involuntarily hospitalized plaintiff alleging that she was restrained from behind, suffered minor bruises on her legs and knees, and suffered mental pain and emotional distress did not establish

defendants' use of excessive force in detaining her).

The Court concludes that Officer Grajales is entitled to qualified immunity with respect to the use of force in effecting plaintiff's arrest.

b.  The District of Columbia is Not Liable under *Monell* for its Alleged Failure to Train, Supervise and Discipline its Police Officers

Plaintiff alleges that the District of Columbia "failed to adequately train, supervise and discipline its officers," and that this failure "demonstrates a gross disregard for the rights of the citizens."[6]  Amd. Compl. ¶ 60 (Count Seven).  "As a direct result of the customs, policies and practices" of the District of Columbia, "[p]laintiff sustained injuries as alleged."  *Id.* ¶ 61. Plaintiff further alleges that the District of Columbia "instituted and maintained formal and informal customs, policies and practices that foster, promote and encourage" police officer misconduct, or in the alternative, failed to institute and maintain "customs, policies and practices that foster, promote and encourage employees' professionalism."  *Id.* ¶¶ 63, 64.

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.  *City of Canton, Ohio v. Harris*,  489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 694 (1978)

---

[6]      In Count Eight of the Amended Complaint, under the heading of "Claim against MPD and D.C. for Due Process Violation – 42 U.S.C. § 1983," plaintiff alleges that the District of Columbia either "instituted and maintained formal and informal customs, policies and practices [including lack of supervision, physical abuse, and failure to train] that foster, promote and encourage such employees['] misconduct," or, in the alternative, "failed to institute and maintain formal and informal customs, policies and practices [including adequate and proper supervision, legal and nonphysical means of discipline, and appropriate training] that foster, promote and encourage employees['] professionalism." Amd. Compl. ¶¶ 63, 64.  These claims do not appear to implicate the United States Constitution's due process provisions.  Rather, these claims are appropriately analyzed in the context of plaintiff's § 1983 and common law negligence claims against the District of Columbia.

(emphasis in original)).  *"Respondeat superior* or vicarious liability will not attach under § 1983." *Id.*  The District of Columbia, then, is subject to liability under § 1983 only "when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right."  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).  The policy or custom itself must be the moving force behind the constitutional violation.  *Id.* (citing *Monell*, 436 U.S. at 694); *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985) (plaintiff must show course deliberately pursued by city establishing affirmative link between city's policy and alleged constitutional violation).

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. at 388; *see Carter v. District of Columbia*, 795 F.2d at 122; *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000).  To determine whether a municipality is deliberately indifferent, the Court considers "whether the municipality knew or should have known of the risk of constitutional violations," and failed to respond appropriately.  *Baker v. District of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003).  A single instance of unconstitutional misconduct by a particular police officer is not sufficient to impose liability on the District of Columbia under *Monell* unless plaintiff also can prove that the misconduct was caused by a municipal policy.  *See Oklahoma City v. Tuttle*, 471 U.S. at 823-24.   Rather, plaintiff must show that "the municipal action was taken with the requisite degree of culpability and [he] must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

12

"*Proving* a failure-to-train claim is no easy task." *Atchison v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (emphasis in original).  Here, plaintiff utterly fails to meet his burden on summary judgment.  Plaintiff points to defendants' unwillingness or inability to produce in discovery "even a scintilla of evidence that the individual officers had any kind of training at all," Pl.'s Opp'n at 7, as evidence supporting the failure-to-train claim.  In conclusory fashion, plaintiff  argues that the arresting officers threatened and assaulted him, allegedly in furtherance of a municipal custom or policy, yet offers neither deposition testimony nor documents of his own in support of the claim.  In light of plaintiff's dismal showing, the Court will grant summary judgment for defendants.  *See Robinson v. District of Columbia*, 402 F.Supp.2d 39, 54 (D.D.C. 2005) (noting absence of evidence on how the officers alleged to have used excessive force were trained, how the training was inconsistent with proper procedures, whether officers were disciplined, and how disciplinary action, or inaction, deviated from established norms); *Fernandors v. District of Columbia*, 382 F.Supp.2d at 77  (absent evidence of unconstitutional strip searches, "it cannot be said that the District knew or should have known the risk of constitutional violations without additional supervision or training"); *Fletcher v. District of Columbia*, No. 01-0297, 2006 WL 670676, *5 (D.D.C. Mar. 22, 2005) (granting summary judgment for District of Columbia where plaintiff failed to provide competent evidence from which jury could conclude that District of Columbia was "moving force" behind constitutional violation).

C.   *Common Law Claims*

1.   Battery[7]

Plaintiff alleges that the conduct of Officers Grajales and Smith during his arrest "constituted an intentional un-consented touching."  Amd. Compl. ¶ 40 (Count One).  This touching was "malicious and deliberate" and caused plaintiff "substantial damages, including but not limited to pain and suffering to the body, humiliation, and mental distress."  *Id.* ¶¶ 41, 42.

"A battery is an intentional act that causes a harmful or offensive bodily contact." *Jackson v. District of Columbia*, 412 A.2d 948, 955 & n.5 (D.C. 1979) (quoting Restatement (Second) of Torts, § 21 (1965)).  A police officer has a "qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'"  *Etheredge v. District of Columbia*, 635 A.2d at 916 (quoting *Jackson v. District of Columbia*, 412 A.2d at 956).  "An arrest situation necessarily involves a battery in the sense of an unwanted seizure or application of force."  *District of Columbia v. Chinn*, 839 A.2d at 706 n.2.  "If the officer does not use force beyond that which the officer reasonably believes is necessary, given the conditions apparent to the officer at the time of the arrest, he is clothed with privilege."  *Id.* at 706.

The District of Columbia is liable for a battery committed by an MPD officer under the doctrine of *respondeat superior* if the officer was acting within the scope of his employment. *See Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997); *District of Columbia v.*

_____

[7]        The intentional torts of assault and battery are distinct.  Assault is the "intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Etheredge v. District of Columbia*, 635 A.2d at 916.  Notwithstanding plaintiff's arguments that the officers committed assault, *see* l.'s Opp'n. at 8-9, the Amended Complaint alleges that officers Grajales and Smith committed battery only.  *See* Amd. Compl. ¶¶ 40-42.

*White*, 442 A.2d 159, 162 n.7 (D.C. 1982); *Wade v. District of Columbia*, 310 A.2d 857, 863

(D.C. 1973) (en banc) (holding that District of Columbia "may be sued under the common law

doctrine of respondeat superior for the intentional torts of its employees acting within the scope

of their employment"). The District acknowledges its potential liability on this theory, as it

"concedes that Grajales and Smith were engaged in the scope of their employment relative to

plaintiff's claims regarding his arrest." Defs.' Mot. at 20.

Plaintiff's deposition testimony establishes that an MPD officer pushed him, shoved him,

held him down, and handcuffed him. These acts constitute battery. Although one or both

officers committed battery, the offending officer is "clothed with privilege," *District of Columbia*

*v. Chinn*, 839 A.2d at 706, because the force used in the course of effecting plaintiff's arrest was

reasonable under the circumstances. Accordingly, summary judgment will be granted for

defendants on the battery claim. *See Richardson v. Dep't of Interior*, 740 F.Supp. 15, 26 (D.D.C.

1990) (granting summary judgment on assault and battery claim where defendant Park Police

officer had probable cause to arrest plaintiff "as long as the force used in making the arrest was

reasonable"); *Wilcox v. United States*, 509 F.Supp. 381, 386 (D.D.C. 1981) (granting summary

judgment on assault and battery claim where there was probable cause for arrest, and plaintiffs

failed to allege assault and battery unrelated to arrest).

### 2. Intentional Infliction of Emotional Distress

Plaintiff alleges that Officers Smith and Grajales engaged in conduct that was "extreme,

outrageous and contrary to basic concepts of human decency," causing him "extreme emotional

distress." Amd. Compl. ¶¶ 45, 46 (Count Two).

A successful claim for intentional infliction of emotional distress requires that a plaintiff

show extreme and outrageous conduct on the part of the defendant which intentionally or recklessly causes the plaintiff severe emotional distress. *Steele v. Isikoff*, 130 F.Supp. 2d 23, 36 (D.D.C. 2000) (citing *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982), *cert. denied*, 459 U.S. 912 (1982)); *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002). The requirement of outrageousness is not an easy one to meet. *See Drejza v. Vaccaro*, 650 A.2d 1208, 1312 (D.C. 1994). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia*, 412 A.2d at 957 (citing Restatement (Second) of Torts § 46 (1965)).

Although the allegations of the Amended Complaint are sufficient to state a claim of intentional infliction of emotional distress, plaintiff cannot survive summary judgment. At this state, plaintiff must "go beyond the pleadings" and show by affidavits, depositions, or answers to interrogatories that a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 324. On summary judgment, the Court asks "whether, based on the evidence produced, a reasonable jury could find that defendant's conduct was both sufficiently outrageous . . . and whether that conduct was done intentionally to hurt plaintiff, or at least with conscious disregard of his [] emotional well-being." *Liser v. Smith*, 254 F.Supp.2d 89, 106 (D.D.C. 2003).

Based on the current record, plaintiff's injuries are limited to minor physical injuries sustained in the course of his arrest. Apart from the conclusory allegations of the Amended Complaint, plaintiff offers no factual support at all with respect to his emotional distress claim, let alone evidence "that would constitute the sort of conduct . . . necessary to give rise to liability for intentional infliction of emotional distress." *Wilcox*, 509 A.2d at 386. His opposition to defendants' motion provides neither affidavits nor documentary evidence sufficient to establish

16

genuine issues of material fact, and defendants' motion on this ground will be granted.

3.  Negligence

Plaintiff alleges that the District of Columbia was negligent for its failure to adequately train and supervise MPD officers, including Officers Grajales and Smith, and that this failure was the proximate cause of plaintiff's injuries.  Amd. Compl. ¶¶ 60, 61 (Count Seven).   The District of Columbia argues that plaintiff cannot prevail on his negligence claims without expert testimony on the applicable standard of care regarding the use of handcuffs.  Defs.' Mot. at 19.

"To establish that a defendant was negligent, the plaintiff must prove that the defendant deviated from the applicable standard of care."  *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987); *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978).  A plaintiff need not present expert testimony in order to prove a deviation from the applicable standard of care if the alleged negligent act is "within the realm of common knowledge and everyday experience."  *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982) (quoting *Matthews v. District of Columbia*, 387 A.2d 731, 734-35 (D.C. 1978)).  Expert testimony is required "where the subject presented is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.'"  *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (quoting  *District of Columbia v. Peters*, 527 A.2d at 1273); *Marshall v. D.C. Caribbean Carnival, Inc.*, No. 02-1298, 2004 WL 3257066, *4 (D.D.C. Oct. 26, 2004) (concluding that the standard of care and deviation therefrom in the planning, management and operation of carnival parade and the maintenance, outfitting and operation of tractor-trailer used as parade float were "beyond the realm of common knowledge and everyday experience"); *see Bell v. Jones*, 523 A.2d 982, 988-90 (D.C. 1986) (requiring expert testimony to determine

national standard of care in professional malpractice action against surveyor); *Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984) (noting that plaintiff in medical malpractice action "must establish through expert testimony the course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances").

Expert testimony generally is necessary on claims of negligent training and supervision of police officers. *See, e.g., Griggs v. Washington Metro. Area Transit Auth.*, No. 99-1552, 2002 WL 31174522, *4 (D.D.C. Sept. 30, 2002) (requiring expert testimony on standards of care for police canine and joint operations between MPD and transit police and deviation from those standards); *District of Columbia v. Peters*, 527 A.2d at 1273 ("[T]he question whether the District was negligent in failing to train its police officers adequately with regard to dealing with mentally disturbed persons or persons under the influence of drugs could be answered only if the jury was made aware of recognized standards concerning such training."); *District of Columbia v. White*, 442 A.2d at 165 (finding clear error in submitting negligence claim to jury absent expert testimony on  MPD training on use of firearm).  Without expert testimony on recognized standards for training and supervising police officers generally, a jury cannot find the District of Columbia negligent in training and supervising defendants Grajales and Smith.  *See Parker v. Grand Hyatt Hotel*, 124 F.Supp.2d 79, 90 (D.D.C. 2000) (concluding that "the standards of police and security training relate to an occupation that is "beyond the ken of the average layman," such that, without expert testimony, negligent-supervision claim could not survive summary judgment); *Etheredge v. District of Columbia*, 635 A.2d at 918; *District of Columbia v. White*, 442 A.2d at 165; *cf. McKnight v. District of Columbia*, 412 F.Supp.2d 127, 132-35 (discussing evidence presented by expert in police policy, practices and procedures regarding use

of force and investigations of incidents involving use of force).

### 4. False Arrest

Insofar as plaintiff alleges that he was "arrested without reason," Amd. Compl. ¶ 10, the Court presumes that he intends to bring a common law claim of false arrest.  "In the District of Columbia, 'the gist of any complaint for false arrest or false imprisonment is an unlawful detention.'"  *Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978) (quoting *Clarke v. District of Columbia*, 311 A.2d 508, 511 (1973)).  There is "no real difference as a practical matter between false arrest and false imprisonment."  *Shaw v. May Dep't Stores Co.*, 268 A.2d 607, 609 n.2 (D.C. 1970).  False arrest, then, is the "unlawful detention of a person without a warrant or for any length of time whereby he is deprived of his personal liberty or freedom of locomotion."  *Tocker v. Great Atlantic & Pacific Tea Co.*, 190 A.2d 822, 824 (D.C. 1963).  "If the arrest was legally justified . . . the conduct of the arresting officer is privileged and a claim will not lie."  *Liser v. Smith*, 254 F.Supp.2d at 95; *Tillman v. Washington Metro. Area Transit Auth.*, 695 A.2d 94, 96 (D.C. 1997); *Gueory v. District of Columbia*, 408 A.2d 967, 969 (D.C. 1979) (arresting officer's actions justified if he had "reasonable good faith belief that the suspect has committed or is committing a crime, based on the fact and circumstances then known to him").

The parties do not dispute that plaintiff was arrested.  The question, then, is whether the arresting officer was justified in making the arrest.  "An officer can demonstrate justification by showing that he had probable cause to believe a crime had been committed."  *Rogala v. District of Columbia*, 161 F.3d at 57; *Weishapl v. Sowers*, 771 A.2d 1014, 1020 (D.C. 2001) ("It will be sufficient to defeat the [false arrest] claim if the officer can demonstrate that he had a good faith

belief that his conduct was lawful and that such belief was reasonable.") (citing *District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C.), aff'd on reh'g, 635 A.2d 929 (D.C. 1993)).  He may, but  need not, demonstrate probable cause in the constitutional sense.  *District of Columbia v. Murphy*, 631 A.2d at 36.  In this case, defendants' prior showing of probable cause is sufficient to defeat a claim of false arrest.

### III.   CONCLUSION

For the reasons stated above, the Court will grant defendants' motion for summary judgment.  An Order consistent with this Memorandum Opinion will be issued separately on this same date.

ROYCE C. LAMBERTH
United States District Judge

Date:  September 21, 2006